# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARVEY PRITCHARD, | CASE NO. 1:02-cv-5947-LJO-DLB PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED |
| v. | |
| F. BROWN, et al., | (Doc. 55) |
| Defendants. | |
| _____/ | |

**A.   Procedural History**

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. This action proceeds on plaintiff's amended complaint against defendants Brown, Keener, Martinez, Randolph and Speidell for violation of plaintiff's rights under the Eighth Amendment during and after a cell extraction. On January 28, 2008, defendants filed a motion for summary judgment, and on February 20, 2008, plaintiff filed an opposition.

**B.   Summary Judgment Standard**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It is the moving party's burden to establish that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. British Airways Board v. Boeing Co., 585 F.2d 946, 951 (9th Cir. 1978).

"When the moving party does not have the burden of proof on the issue, he need show only that the opponent cannot sustain his burden at trial." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (quoting from W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact 99 F.R.D. 465, 487 (1984)). "But where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Id. Thus, as to plaintiff's motion for summary judgment, plaintiff must demonstrate there is no triable issue as to the matters alleged in his complaint. Id. This requires plaintiff to establish beyond controversy every essential element of his retaliation claims. Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir. 1986). Plaintiff's evidence is judged by the same standard of proof applicable at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

As to defendants' motion for summary judgment, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

**C.    Defendants' Motion for Summary Judgment**

  **1.    Undisputed Facts[1]**

1.  Plaintiff is an inmate in the lawful custody of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff was housed in the Security Housing Unit (SHU) at the California State Prison Corcoran from April 2001 to November 2001.
2.  Plaintiff was housed in cell 4A, 1L, on the top tier of the SHU.
3.  On July 27, 2001, plaintiff covered his cell window with a blanket and sheet.
4.  Plaintiff covered his cell window because he was angry and frustrated that he had not received his personal property after being transferred to Corcoran. Plaintiff became aggravated because he believed that prison officials had lost his property.
5.  Though plaintiff was transferred to the Corcoran Security Housing Unit, plaintiff's property was sent, in error, to Pelican Bay State Prison. Plaintiff got angrier and more frustrated when he and saw other inmates receiving their personal property.
6.  Plaintiff decided to cause a disturbance because he thought that he was not going to get his property because he felt staff were not doing enough to locate his property.
7.  Prisoners cover up their cell windows as a common method of protest. Covering cell windows is the fastest way to get a response from an officer. The guard in the tower informs the floor officers that a cell window is covered. In response, the floor officers come to the

---

[1] "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those facts that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission or other document relied upon in support of that denial." Local Rule 56-260(b). In this instance, plaintiff did not comply with the Local Rule. However, plaintiff's complaint and opposition to the motion for summary judgment may be treated as opposing affidavits, to the extent that they are verified and set forth admissible facts (1) within plaintiff's personal knowledge and not based merely on plaintiff's belief, and (2) to which plaintiff is competent to testify. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); McElyea v. Babbitt, 833 F.2d 196, 197-98 (9th Cir. 1987); Lew v. Kona Hosp., 754 F.2d 1420, 1423 (9th Cir. 1985).

4

cell. Plaintiff described this method as a way of getting a response from a higher ranking officer, such as a sergeant or lieutenant.

8. Covering cell windows prevents staff from completing their inmate count, from seeing whether inmates are engaged in illegal activities, and from determining whether inmates are injured.

9. After covering his window, Plaintiff waited for forty-five minutes for a response by custody staff. Plaintiff flooded his cell when there was no staff response. Plaintiff clogged his toilet with a state-issue towel and flushed it until the water flowed on the floor and out on to the tier.

10. Plaintiff flushed his toilet for thirty minutes. The water flowed from his second floor tier down into the rotunda section of his housing unit. Plaintiff stated that flooding cells is something that prisoners do when they are frustrated or angry because they know it makes the staff angry when they have to clean it up.

11. Between 8:30 and 9:00 P.M., an officer came to Plaintiff's cell door. However, Plaintiff did not respond to the officer because the officer was not a lieutenant.

12. Plaintiff explained that officers give an inmate one last opportunity to submit to handcuffs before initiating a cell extraction. If the inmate does not submit to handcuffs, staff will administer pepper spray, use a metal barricade, or shoot rubber bullets through the food port. Plaintiff intended to use his mattress to block the food port to prevent these measures from being used against him.

13. Plaintiff also planned to push the mattress against the door to prevent staff from entering.

14. Plaintiff rolled up his mattress and placed it near his cell door. Plaintiff wrapped himself in a blanket and laid down on the floor. Plaintiff laid down on his left side facing the cell door. Plaintiff positioned himself there so that he could look under the door and see what was happening without having to remove the window coverings. Plaintiff selected the area where he laid because it was wider and away from the edges of his desk or bunk.

15. Several minutes after the first officer left, Defendant Speidell walked to the front of

5

Plaintiff's cell door and gave Plaintiff a direct order to remove the coverings from his window.

16. Plaintiff understood the order, but did not remove the coverings from his cell window.

17. Plaintiff did not respond to Speidell.

18. Plaintiff saw officers approach his cell door. The door opened an inch or two. Plaintiff got up on his knees and elbows in a hunched position. Plaintiff looked up at Officer Martinez and then looked away. Plaintiff's cell door was closed.

19. Plaintiff did not respond to Martinez.

20. Plaintiff saw the cell extraction team come up the stairs.

21. Plaintiff's cell door was opened. Plaintiff got to his feet to push the mattress against the door to prevent it from opening.

22. Plaintiff was initially successful in jamming the door because it was only able to open about a foot.

23. When the door was open enough for the extraction team to see Plaintiff, he was hit with pepper spray.

24. Plaintiff backed up a few feet while holding the mattress at chest level below his chin. Plaintiff's face was visible with his hands holding the mattress on the outside.

25. After being hit with pepper spray, Plaintiff, still on his feet, dropped the mattress and reached for a towel to cover his face.

26. Before Plaintiff picked up the towel and before a second canister of pepper spray was discharged, Plaintiff stated that the officers were probably shouting orders at him to get down on the floor.

27. Plaintiff was given verbal commands to get down.

28. Plaintiff, still standing, backed up a few feet. Custody staff administered a second canister of pepper spray.

29. Plaintiff recalled that he was probably given orders by officers to get down after the second canister was administered.

30. If an inmate does not comply with the order to get down, officers may believe that an inmate is going to resist, fight, and injure themselves or others.

6

31. Plaintiff stated that if an inmate does not comply with a get-down order, officers would be justified in using the force necessary to get that inmate down and apply additional force to get control of the situation.

32. After the second canister of pepper spray was administered, Plaintiff got in a prone position, on his stomach with his hands over his head.

33. Plaintiff was placed in handcuffs and leg chains.

34. Plaintiff has no dispute with the officers who placed him in handcuffs and leg chains.

35. Plaintiff was wearing a pair of boxer shorts, T-shirt, socks, and a pair of state issued sneakers with canvas tops and rubber soles.

36. Plaintiff was lifted up and taken out of his housing unit to a grassy area. Plaintiff and the officers did not speak to each other as Plaintiff was being cuffed and taken to the grassy area.

37. A medical technician assistant asked Plaintiff if there was anything wrong with him.

38. Plaintiff recalled that his feet hurt because of being taken down the stairs, but his main complaint was that he had a burning sensation from the pepper spray. Plaintiff indicated that the skin on his toes was not scraped because he was wearing shoes.

39. Plaintiff was sprayed with water for fifteen minutes as part of the decontamination process for the pepper spray.

40. Plaintiff requested more water. Plaintiff was informed that additional water was available in his cell.

41. The medical technician assistant reported that Plaintiff said he was not injured. Plaintiff presented no signs or symptoms of labored breathing, no visible injuries, and was alert and able to speak. The medical technician assistant cleared Plaintiff to return to his cell.

42. Plaintiff was escorted back to his cell. Plaintiff was put back in his cell and his handcuffs and leg chains were removed.

43. By the time Plaintiff was brought back to his cell, it had been rinsed out to decontaminate it and his belongings were removed.

44. Plaintiff was placed on ten days of management control status. All movable objects were removed from his cell, including Plaintiff's bedding.

45. Plaintiff explained that placement in a strip cell gives an inmate a chance to cool off and, in part, it eliminates custody staff from having to do repeated cell extractions if the inmate is still upset. After being in a strip cell, the inmate's property is returned to him. The inmate is then more likely to want to keep his property rather than cause another disturbance.

46. Plaintiff had hot and cold water in his cell, but the water did not run fast enough for him to fill his hands and splash himself. Plaintiff scooped water out of the toilet to complete the decontamination process.

47. The morning after the cell extraction, the burning sensation over Plaintiff's body subsided, except for his hands and feet.

48. The burning sensation from the pepper spray completely subsided after three days.

49. Plaintiff's pain in his toes subsided after several days.

50. Plaintiff complained of discomfort in his hips and shoulders from sleeping without a mattress.

51. Plaintiff's mattress, along with his personal property, was returned to him on the tenth day after the cell extraction. The soreness and discomfort went away a few days after he received the mattress.

52. Plaintiff has no further medical problems resulting from the cell extraction.

53. Plaintiff admits that he delayed a peace officer by covering up his windows and flooding the tier.

**Undisputed Facts About Defendant Brown**

54. Plaintiff did not speak to Warden Brown at any time either before or after the cell extraction on July 27, 2001.

55. Plaintiff did not see Warden Brown at the prison on July 27, 2001.

56. Warden Brown was not present at the cell extraction on July 27, 2001.

57. Plaintiff has no evidence that Warden Brown was at the prison on the day of the cell extraction.

58. Warden Brown was not aware of the amount of force used during the cell extraction on July 27, 2001.

8

59. Plaintiff has no proof that Warden Brown knew about the cell extraction on July 27, 2001.

60. Warden Brown did not know that Plaintiff had been placed in a strip cell for ten days.

**Undisputed Facts About Defendant Martinez**

61. Defendant Martinez's involvement in the cell extraction was limited to going to Plaintiff's cell to talk to him, find out his intentions, and establish his location.

62. Defendant Martinez observed Plaintiff lying on the floor of his cell. Plaintiff looked at Martinez and then looked away. Plaintiff did not respond to any verbal commands made by Martinez.

63. Martinez reported this information to Defendant Keener.

64. Martinez did not otherwise see or participate in the cell entry and extraction.

**Undisputed Facts About Defendant Keener**

65. Plaintiff spoke to Keener shortly after the cell extraction. Keener asked Plaintiff why he had covered his cell windows. Plaintiff said that he had covered up his windows because he was frustrated about his missing property.

66. Because Plaintiff covered his cell windows and did not respond to officers, which compelled an emergency cell extraction, Defendant Keener ordered Plaintiff placed on ten days of management control status.

**2.    Discussion**

**a.    Defendant Brown**

Defendant Brown argues that he is entitled to summary judgment because he had no contact with plaintiff before or after the cell extraction, he was not present during the cell extraction and plaintiff has no evidence that he was even present at the prison on the day of the incident. DUF 54-56.

Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of respondeat superior. When the named defendant holds a supervisorial position, the causal link between the defendant and the claimed constitutional violation must be established. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld,

9

589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To maintain his claim against defendant Brown, plaintiff must set forth some evidence that defendant either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Plaintiff has submitted no evidence that defendant Brown personally participated, knew of and disregarded a substantial risk to his safety, in violation of his Eighth Amendment rights. Defendant may not be held liable under section 1983 for the actions of his employees under a theory of respondeat superior. Defendant is therefore entitled to judgment as a matter of law.

**b.    Excessive Force**

Plaintiff alleges the force used against him was applied maliciously and sadistically with the purpose of trying to cause him pain and/or serious injury. He also contends the amount of force used was unnecessary under the circumstances and that defendants failed to consider an approach that would not require force. Plaintiff claims defendants failed to follow the Department's established use of force policy.

Defendants contend the force used on plaintiff was reasonable and appropriate under the circumstances. Defendants point out that plaintiff covered his cell window and flooded the tier. DUF 3, 9 and 10. Plaintiff did not respond to officers' calls or orders to remove the covering. DUF 8, 11. Plaintiff placed his mattress near the cell door and wrapped himself in a blanket. DUF 14. Plaintiff did not respond to a direct order from defendant Speidell to remove the coverings. DUF 15, 17. For a third time, correctional staff visited plaintiff's cell and plaintiff was nonresponsive (DUF 18-19) and pushed the mattress against the cell door to prevent it from being opened any further. DUF 22-24. Defendants contend it was only then that officers discharged pepper spray. *Id*. Even after the initial spray, plaintiff remained on his feet and was given orders to get down in a prone position. DUF 26-27. When plaintiff backed up several feet and reached for a towel, he was again pepper sprayed. DUF 26-28.

Defendants argue and plaintiff does not dispute, that an inmate who does not comply with a get down order can be viewed by officers as likely to resist, fight or injure themselves or others. In light of the facts that before any use of force was used, plaintiff covered his cell door and window, caused flooding, disobeyed orders, was unresponsive and resisted officers from entering his cell and even after the first cannister of pepper spray was administered, plaintiff did not comply with orders, defendants argue the use of pepper spray and restraints was not excessive force.

The court finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In his opposition to defendants' motion for summary judgment, plaintiff contends the force was used maliciously and sadistically with the purpose of trying to cause him pain and the amount of force was the maximum under the circumstances. Plaintiff contends defendants never considered an approach that would require less force and in fact violated their own use of force policy. Plaintiff contends that defendants should have attempted to establish a "dialog" with him to attempt to resolve the issues. Plaintiff states that he did not believe that defendants could enter his cell and use any kind of force against him without first ordering him to submit to handcuffs and reading the use of force warning.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. (internal quotation marks

and citations omitted). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident. Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries)). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." Id. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. at 9-10 (internal quotations marks and citations omitted).

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

Here, it is undisuted that after flooding his cell and the tier and covering his window, plaintiff failed to respond to officers and failed to respond to a direct order from Officer Speidell to remove the window covering. Plaintiff then failed to respond to Officer Martinez and physically resisted officers' attempts to open his cell door. Even after plaintiff was initially sprayed, he did not comply with orders to get down. Insubordination is a matter taken very seriously within the confines of an institutional setting. Plaintiff's refusal to comply with the direct orders of defendants created a need for the application of force to gain plaintiff's compliance, and the force at issue was employed for the very purpose of gaining plaintiff's compliance with the order. When an inmate refuses to comply with the order of a staff member, a threat may be reasonably perceived by staff. It is undisputed that defendants repeatedly approached plaintiff's cell and Plaintiff was nonresponsive. It is also

undisputed that plaintiff failed to comply with direct orders. Thus, defendants could reasonably have perceived plaintiff's continued disobedience to be a threat requiring the use of force. Accordingly, defendants are entitled to judgment as a matter of law on this claim.

### b.    Plaintiff's Cell Conditions

Plaintiff contends that when he was returned to his cell, his skin was still burning so he splashed water on his face. Because the water in his cell ran too slowly, plaintiff used the water from the toilet to rinse off his skin, which he describes as "humiliating." In addition, plaintiff complains that his cell was stripped of all movable objects for 10 days.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Where a prisoner alleges injuries stemming from unsafe conditions of confinement, prison officials may be held liable only if they acted with "deliberate indifference to a substantial risk of serious harm." Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

The deliberate indifference standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must "know[] of and disregard[] an excessive risk to inmate health or safety . . . ." Farmer, 511 U.S. at 837. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of harm and disregards that risk by failing to take reasonable measures to abate it. Id. at 837-45. Prison officials may avoid liability by presenting evidence that they lacked knowledge of the risk, or by presenting evidence of a reasonable, albeit unsuccessful, response to the risk. Id. at 844-45. Mere negligence on the part of the prison official is not sufficient to establish liability, but rather, the official's conduct must have been wanton. Id. at 835; Frost, 152 F.3d at 1128.

"What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishment Clause depends upon the claim at issue . . . ." Hudson v. McMillian, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." Id. at 8 (quotations and citations omitted). "[E]xtreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Id. at 9 (citation omitted). With respect to this type of claim, "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Id. (quotations and citations omitted).

Defendants submit evidence that plaintiff had hot and cold water in his cell, however, it ran slowly and therefore plaintiff decided to rinse off with the water from the toilet. See DUF 46. Defendants also contend that removing all movable objects from plaintiff's cell was necessary to decontaminate the cell and to allow plaintiff to cool down so that further disturbances necessitating extraction did not occur. See DUF 44-45.

The court finds that defendant has met his initial burden of informing the court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

In his opposition, plaintiff reiterates the conclusory allegations set forth in his amended complaint that he was confined in his cell with only one pair of boxer shorts for 10 days which he describes as "inhumane."

Plaintiff's confinement in his cell without movable objects for 10 days does not rise to the level of wanton and unnecessary infliction of pain. Plaintiff does dispute that this was a disciplinary

14

measure taken after he delayed officers by covering his window and flooding the tier. DUF 53. Plaintiff has submitted no evidence that the conditions in his cell rose to the level of an Eighth Amendment violation. Keenan v. Hall, 83 F.3d 1083, 1089-92 (9th Cir. 1996). Plaintiff has set forth no evidence that raises any triable issues of fact concerning the conditions of the cell he was held in for 10 days. Accordingly, the court finds that defendants are entitled to judgment as a matter of law on this claim.

      **c.**     **Deliberate Indifference**

Plaintiff contends he experienced pain in his shoulder and hip from sleeping without a mattress and did not received medical treatment.

Defendants submit evidence that following the extraction, the medical technical assistant reported that plaintiff was not injured and cleared plaintiff to return to his cell. DUF 41. Defendants also submit evidence that plaintiff's mattress was returned after the ten-day disciplinary period and plaintiff admitted that his pain and discomfort went away after his mattress was returned. DUF 51. Plaintiff also testified at his deposition that he has no further medical problems resulting from the cell extraction. DUF 52.

The Court finds that defendants have met their burden of informing the Court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As stated above, in attempting to establish the existence of this factual dispute, Plaintiff may not rely upon the mere allegations or denials of his pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973).

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal

civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Plaintiff's opposition is essentially a reiteration of the allegations set forth in the complaint. Although Plaintiff's allegations were sufficient to state a claim for relief under federal notice pleading standards, at this stage in the litigation, Plaintiff must come forth with evidence in support of his claims. Plaintiff has not done so.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Plaintiff's mere allegations that he suffered from pain and was denied medical treatment are insufficient to defeat Defendant's motion. Plaintiff has submitted no evidence that defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health or safety." Farmer, 511 U.S. at 837. Accordingly, defendants are entitled to judgment as a matter of law on Plaintiff's claim that they were deliberately indifferent to his serious medical condition.

D. Conclusion

Based on the foregoing, it is HEREBY RECOMMENDED that Defendants' motion for summary judgment, filed January 28, 2008, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 16, 2008**                             /s/ **Dennis L. Beck**
                                                           UNITED STATES MAGISTRATE JUDGE